UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 14-cv-22679-GOODMAN

**[consent case]**

**NICOLE GULBALIS**

    **Plaintiff,**

v.

**ANDREW DAVIDSON, Director, USCIS**
**Kendall Field Office, et al.,**

    **Defendants.**

    _____/

## ORDER ON MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

This matter is before the Undersigned[1] on Defendants'[2] Motion to Dismiss (the "Motion") Plaintiff Nicole G. Gulbalis' ("Plaintiff" or "Gulbalis") Petition for failure to state a claim. [ECF No. 7]. After reviewing the Motion, Plaintiff's response in opposition [ECF No. 12], Defendants' reply in support of the Motion [ECF No. 15], and all other portions of the record, the Undersigned **grants** the Motion. For the reasons outlined

---

[1] The parties consented to full magistrate judge jurisdiction, and the District Court then entered an order confirming that consent and referring this matter to the Undersigned "to conduct any and all further proceedings required in this case, including the entry of final judgment." [ECF Nos. 13; 16].

[2] The Defendants in this case include Andrew Davidson, Director, U.S. Citizenship and Immigration Services ("USCIS") Kendall Field Office; Linda Swacina, Director, USCIS Miami District; and Leon Rodriguez, Director, USCIS.

below, the Undersigned **affirms** the U.S. Citizenship and Immigration Services' ("USCIS") decision, **denies** Gulbalis' Petition for relief [ECF No. 1], and enters **final judgment** in favor of the USCIS and against Gulbalis. The Clerk of the Court is directed to **close this case.**

I.   BACKGROUND AND LEGAL FRAMEWORK

In her Petition, Gulbalis seeks review of a USCIS decision denying her naturalization application.

The statute governing naturalization provides a detailed procedure for consideration of naturalization applications. In general, a lawful permanent resident alien may be naturalized as a United States citizen if the resident alien meets a five-year residency requirement, has resided continuously in the United States from the date of her application for naturalization to the time of admission as a citizen, and is of good moral character. *See* 8 U.S.C. § 1427(a).

The process begins when a naturalization applicant files a Form N–400 application for naturalization. *Id.* § 1445(a); 8 C.F.R. §§ 334.2; 316.4. USCIS then conducts a background investigation of the applicant, including a review of all pertinent immigration and police records. 8 U.S.C. § 1446(a); 8 C.F.R. § 335.1. Next, the applicant is interviewed by an examiner who is authorized to grant or deny the application and who "shall" make the decision whether to grant or deny the application within 120 days of the initial examination. 8 U.S.C. § 1446(d); 8 C.F.R. § 335.3.

The application is also subject to an "examination" that may include testimony of witnesses in addition to the applicant and production of relevant books, papers, and documents. 8 U.S.C. § 1446(b). USCIS makes a decision on the application once the examination and all background checks are complete. If USCIS denies the application, then the applicant may seek a hearing before an immigration officer *Id.* § 1447(a).

If unsuccessful at that hearing, then a naturalization applicant may file a petition for judicial review of an adverse USCIS decision in the federal judicial district in which the applicant resides. 8 U.S.C. § 1421(c). That judicial review is *de novo* and the Court is to "make its own findings of fact and conclusions of law." *Id.* Gulbalis' naturalization effort is at this stage.

In evaluating a naturalization application, "[t]he burden is on the alien applicant to show his eligibility for citizenship in every respect . . . . [Any] doubts should be resolved in favor of the United States . . . ." *Berenyi v. Distrib. Dir., Immigration & Naturalization Serv.,* 385 U.S. 630, 637, 656 (1967) (internal quotation marks and citation omitted). "An applicant for naturalization bears the burden of demonstrating that, during the statutorily prescribed period, he or she has been and continues to be a person of good moral character. This includes the period between the examination and the administration of the oath of allegiance." 8 C.F.R. § 316.10(a)(1).

According to her Petition, Gulbalis is a German citizen and legal permanent resident of the United States. [ECF No. 1, p. 1]. On August 30, 2012, she filed a

naturalization application (Form N-400) with the Department of Homeland Security's USCIS division, pursuant to 8 U.S.C. § 1421(c). [*Id.*].

Part 10 of the naturalization application requires applicants to disclose information concerning prior arrests and convictions. Gulbalis disclosed a 2001 arrest and conviction, in this Court, for conspiracy to defraud the United States and its agencies and to import into the United States motor vehicles in violation of 18 U.S.C. § 371. On April 22, 2013, her naturalization application was denied -- as USCIS found that her prior conviction constituted an "aggravated felony" as defined by statute, 8 U.S.C. § 1101(a)(43). Under controlling law, conviction of an aggravated felony precludes a finding that one possesses the "good moral character" required for naturalization. 8 U.S.C. § 1101(f)(8); 8 C.F.R. § 316.10(a)(1); (b)(1)(ii).

On May 6, 2013, Gulbalis appealed the USCIS decision by filing a request for a hearing on a decision in naturalization proceedings (Form N-336). [ECF No. 1, p. 2]. A hearing was held on June 24, 2013. [ECF No. 1, p. 2]. Gulbalis argued that the offenses leading to her April 24, 2002 conviction did not constitute an aggravated felony and that she therefore does have the good moral character required for naturalization. [ECF No. 1, p. 2]. On June 24, 2014, the USCIS reaffirmed its denial of Plaintiff's naturalization application, confirming its position that Gulbalis' prior conviction constitutes an aggravated felony.

On July 17, 2014, Plaintiff filed her Petition in this Court, requesting a *de novo* determination of her naturalization application, again arguing that her prior conviction does not constitute an aggravated felony.[3] [ECF No. 1, p. 7]. In the alternative, Gulbalis asks this Court to remand her application to USCIS for immediate adjudication. [ECF No. 1, p. 7]. Defendants filed a Motion to Dismiss the Petition for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). [ECF No. 7]. That Motion argues that Plaintiff cannot show she possesses good moral character because she was convicted of an aggravated felony and therefore the Petition should be dismissed for failure to state a claim.

---

[3] Gulbalis styled her Petition as a "Petition for Hearing." [ECF No. 1]. However, at the scheduling conference in this case, both parties indicated that the matter could be disposed of based on the already-filed Motion to Dismiss, related filings, and the administrative record. In addition, other courts have explicitly found that the words "hearing *de novo*" in § 1421(c) do *not* mean that one is necessarily entitled to a bench trial or evidentiary hearing, and that such a matter can be disposed of at the pleading stage. *Chan v. Gantner*, 464 F.3d 289, 295 (2d Cir. 2006) ("Chan argues that the phrase 'hearing *de novo*' in section 1421(c) implies a bench trial or evidentiary hearing and thus sets forth an alternative practice. We disagree. The term 'hearing' has a 'host of meanings' that encompass a wide variety of procedures.") (citing *United States v. Florida E. Coast Ry. Co.*, 410 U.S. 224, 239 (1973)); *see also Kariuki v Tarango*, 709 F.3d 495, 503 (5th Cir. 2013) (finding that "hearing *de novo*" language in § 1421(c) "encompasses an FRCP 56 review on summary judgment"); *Baraket v. Quarantillo*, No. 09-CV-3547 NGG, 2012 WL 3150563, at *1 (E.D.N.Y. July 31, 2012) (resolving § 1421(c) petition on a motion to dismiss for failure to state a claim.).

5

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard); *Navarro v. Holder*, 840 F. Supp. 2d 1331, 1334 (S.D. Fla. 2012) (setting forth 12(b)(6) standard and applying it in a § 1421(c) context).

### A. The underlying criminal case

On January 4, 2002, Gulbalis pleaded guilty to, and on April 24, 2001 was convicted for, conspiracy to defraud the United States and its agencies and to import into the United States motor vehicles in violation of 18 U.S.C. § 371. [ECF No. 1-3, pp. 19-24]. According to the indictment in that case, the purpose of the conspiracy was to, *inter alia*, obtain profits from the importation and sale of motor vehicles that could not be legally sold in the United States because they did not conform to certain safety and environmental standards.

In addition to the conspiracy charge, the indictment in the criminal case included five counts of smuggling and two counts of mail fraud. Essentially, the indictment alleged that Gulbalis was involved in a scheme whereby she falsely declared that motor vehicles were imported for her personal use, and therefore not subject to certain taxes and regulatory requirements, and then illegally sold those vehicles for personal gain. However, all of the charges except for the conspiracy charge were dismissed pursuant to Gulbalis' plea agreement. [ECF No. 15-1, *United States. v. Nicole G. Schmitt*, Case No. 01-0713-CR-GOLD, ECF No. 38 (S.D. Fl. Jan. 7, 2002)]. The Court entered a criminal judgment based on that plea agreement. The Court also entered a restitution order, ordering Gulbalis to pay $675,000 in restitution related to forty-five already-imported vehicles.

## II.   ANALYSIS

The term "aggravated felony" is defined by statute, and it includes a broad variety of crimes. 8 U.S.C. § 1101(a)(43). Among those crimes is an offense that "(i) involves fraud or deceit in which the loss to victim or victims exceeds $10,000.00." 8 U.S.C. § 1101(a)(43)(M). Subsection U specifies that any attempt or conspiracy to commit an aggravated felony also constitutes an aggravated felony. 8 U.S.C. § 1101(a)(43)(U). In its final, post-hearing decision, the USCIS reaffirmed its denial of Gulbalis' naturalization application on the basis that her prior conviction constituted an aggravated felony because: (1) the restitution that Gulbalis was ordered to pay

exceeded $10,000 and represented loss to victims of her convicted crime, and (2) the crime she was convicted of involved fraud or deceit. [ECF No. 1, p. 2].

Gulbalis does not take issue with the USCIS finding that her prior conviction involved fraud or deceit. Nor can she. It is well established that a conviction does not even need to require fraud or deceit as actual, formal elements of the crime in order to meet the statutory definition of "aggravated felony." *Kawashima v. Holder*, 132 S. Ct. 1166, 1172 (2012) *reh'g denied*, 132 S. Ct. 1961 (2012). Gulbalis' conviction, for "conspiracy to **defraud** the United States, . . . and to import into the United States motor vehicles contrary to law," clearly involves fraud and deceit. [ECF No. 1-3, p. 19].

The crux of the Petition is Gulbalis' argument that her conviction for conspiracy did not involve the minimum $10,000 victim loss necessary to constitute an aggravated felony pursuant to § 1101(a)(43)(M). Gulbalis argues that the amount in the restitution order does *not* represent a loss to victims of the crime she was convicted of (conspiracy). Essentially, in Gulbalis' view, the USCIS "should not have simply relied on the restitution order to deny her naturalization application as an aggravated felon, because the restitution order is not tied to her convicted conduct." [ECF No. 12, p. 5]. In addition, Gulbalis argues that the "purpose of the restitution was not to make victims whole, but to pay for the subject vehicles to be in compliance with U.S. regulatory standards." [ECF No. 1, p. 2].

8

To support her claim, Gulbalis argues that there was no loss amount listed in the actual judgment, either actual or prospective. In addition, Gulbalis argues that the only "victim" of her crime was the entity she conspired to defraud -- the U.S. government, including the U.S. Customs Service, the U.S. Environmental Protection Agency, and the National Highway Traffic Safety Administration of the Department of Transportation. While Gulbalis was convicted of conspiracy to defraud these agencies, she was not specifically convicted of defrauding any of the individuals in the restitution order. [ECF No. 12, p. 2]. Therefore, her argument goes, the restitution order (ordering that she pay money to certain individuals, including co-conspirators, totaling $675,000) is not tied to the conduct she was convicted for (defrauding the United States).

Finally, while Gulbalis also stipulated to a loss in the range of $41,000 to $70,000 in her plea agreement, in her view, that loss is not tied to the monetary amount in the order of restitution, and this means it cannot provide a basis for a finding that the $10,000 threshold is met.

The Undersigned disagrees. Gulbalis's prior conviction does constitute an aggravated felony, as defined by 8 U.S.C. § 1101(a)(43).

In essence, Gulbalis' interpretation of the criminal judgment and restitution order is simply too strained and narrow. As she acknowledges, a "circumstance-specific" approach is used to determine whether specific conduct constitutes an aggravated felony under 8 U.S.C. § 1101(a)(43). *Nijhawan v. Holder*, 557 U.S. 29, 36

(2009). This means that the Court looks not to the elements of the crime at issue, here, conspiracy to defraud the Government, to ascertain whether the $10,000 threshold is met, but instead to the circumstances surrounding the specific commission of that crime. *Id.*

Critically, in *Nijhawan*, the Supreme Court found "nothing unfair about the Immigration Judge's . . . [reliance] upon earlier sentencing-related material . . . [including] Petitioner's own stipulation [and the] court's restitution order." *Id.* at 42-43; *see also Ramos v. U.S. Atty. Gen.*, 709 F.3d 1066, 1069 (11th Cir. 2013) (finding that examination of underlying criminal proceedings for purposes of ascertaining whether the loss to the victim exceeds $10,000 includes review of "documents involving the charge, plea agreement, or sentence.").

Before the Supreme Court issued its opinion in *Nijhawan*, the Eleventh Circuit found, in *Obasohan v. Attorney General*, 479 F.3d 785 (11th Cir. 2007), *abrogated by Nijhawan*, 557 U.S. 29 (2009), that an Immigration Law judge should not have relied on loss amounts in a restitution order to determine whether one has been convicted of an aggravated felony -- at least in the circumstances of that case. Gulbalis relies heavily on *Obasohan*. She is correct that *Nijhawan* did not expressly overrule *Obasohan*, though its continuing precedential value is questionable at best.

There are several reasons to question Gulbalis' argument that *Nijhawan* "merely distinguished" *Obasohan* and that "*Obasohan* continues as precedent in the Eleventh

10

Circuit." [ECF No. 12, p. 3]. First, Westlaw itself designates it as being "abrogated" by *Nijhawan*. Second, later Eleventh Circuit cases include the phrase "abrogated on other grounds" or similar language when citing Obasohan for any purpose, such as the non-controversial point that courts review *de novo* whether a conviction qualifies as an "aggravated felony." *See, e.g., Accardo v. U.S. Atty. Gen.*, 634 F.3d 1333, 1336 (11th Cir. 2011) (using "abrogated on other grounds"); *Ragoonath v. U.S. Atty. Gen.*, 533 Fed. App'x 954, 956 (11th Cir. 2013) (describing *Obasohan* as "overruled on other grounds by *Nijhawan*").[4]

But in any event, Gulbalis is not correct in her assertions that her case is similar to *Obasohan*, or that this Court should not look to the restitution order or plea agreement in determining whether the $10,000 threshold is met.

In *Obasohan*, the Eleventh Circuit noted that "Obasohan was not charged with *any* loss, and did not admit to any loss by pleading guilty as charged. Moreover, there was no loss attributable to the only overt acts charged in the indictment, to which Obasohan admitted by pleading guilty." *Obasohan*, 479 F.3d at 789 (emphasis in original). Critically, the *Obasohan* Court found that Obasohan's restitution was not

---

[4] In her response to the dismissal motion and memorandum, Gulbalis challenged the Defendants' citation to another Federal Appendix case as being "an unpublished decision and not precedential in this jurisdiction." [ECF No. 12, p. 4]. While technically correct, this point is incomplete. Eleventh Circuit Rule 36-2 explains that unpublished opinions "may be cited as persuasive authority."

11

based on the overt acts to which Obasohan admitted by pleading guilty. *Obasohan*, 479 F.3d at 790, n. 9.

Those facts are *not* analogous to Gulbalis' case. As outlined below, the losses are directly tied to her conviction and incorporated into the criminal judgment. In addition, the *Nijhawan* Court clearly eschews the modified-categorical approach taken in *Obasohan* and there is no indication that the *Obasohan* court would reach the same ruling were that case to be decided today.[5]

Finally, even if the Undersigned were to find the restitution order was *not* tied to Gulbalis' conviction, or that the victim loss specified therein was not related to her conviction, in contrast to the *Obasohan* case, her plea agreement specifically states that the "actual, probable or intended loss . . . resulting from the offense committed in this case is within the range of $41,000 to $70,000." [ECF No. 15-1]. This provides a *separate* reason to affirm the USCIS decision denying Gulbalis's naturalization application.

### A. The USCIS properly relied on the restitution order in determining whether Gulbalis was previously convicted of an aggravated felony.

In *Obasohan*, the single-count indictment was for "conspiracy to produce, use and traffic in counterfeit access devices, in violation of 18 U.S.C. § 1029(b)(2)," -- essentially conspiracy to engage in credit card fraud. *Obasohan*, 479 F.3d at 786. A co-defendant had presented a false ID to a postal worker to obtain another man's mail, including his

---

[5] Gulbalis has not pointed to a post-*Nijhawan* case where a reviewing court refused to look to a restitution order to determine if the $10,000 threshold was met.

credit card. Obasohan agreed to plead guilty to that count. *Id.* The Government acknowledged that while it was pursuing evidence that could show Obasohan caused a loss of thousands related to *another* credit card, that loss was unrelated to the credit card for which Obasohan was being charged. *Id.* The Probation Office later prepared a Presentence Investigation Report that showed Obasohan had caused losses in excess of $37,000 to three financial institutions through his fraudulent use of that *other* credit card. Obasohan was ultimately ordered to pay restitution in the amount of the loss associated with that other credit card.

The Board of Immigration Appeals upheld a decision to remove Obasohan, finding that the $37,000 related to his conviction. It was that decision that the Eleventh Circuit ultimately reversed, because "[n]one of the losses [in the restitution order] was tied to use of the one credit card which Obasohan admitted he had fraudulently acquired." *Id.*

Gulbalis' case is markedly different than *Obasohan*. While both Obasohan and Gulbalis were convicted of conspiracy, the restitution order in Gulbalis' case *is* directly tied to the conspiracy conviction -- i.e., the loss stems from the conspiracy. Gulbalis' case is far more like *Nijhawan*, 557 U.S. at 29, in this respect. Further, the restitution order in Gulbalis' case is closely tethered to her criminal judgment, and clearly relates to the same general conduct.

Gulbalis' assertion that the "judgment does not specify any amount of loss to a victim" is factually incorrect. [ECF No. 1, p. 2]. The judgment entered against Gulbalis in the criminal case includes a "Criminal Monetary Penalties" section. [ECF No. 1-3, p. 23]. That section specifically states that Gulbalis must pay $675,000.00 in restitution, made payable to "U.S. Courts." [*Id.*]. Two footnotes in that section severely undermine Gulbalis' argument. Footnote one states that the "restitution order, consisting of five pages, filed with the Clerk of Court on April 16, 2002, a copy attached hereto, is hereby incorporated and made part of this judgment." [*Id.*]. So, contrary to Gulbalis' assertion, the restitution order *is* explicitly tied to the criminal judgment.

Footnote two states that the Clerk of the Court "shall forward the payments **to the victims of the offense in this case**." [*Id.*]. The payments referenced are those made on the $675,000 restitution order. So, the judgment clearly *does* consider the persons who will be paid under the restitution order "victims of the offense in this case." [*Id.*]. Nothing in the criminal case record suggests that Gulbalis objected to either the judgment or restitution order.

The restitution order, incorporated into the judgment by reference, also supports a finding that Gulbalis' conviction involved victim loss exceeding $10,000. It states that Gulbalis "shall pay restitution **to the victims** identified in this case." [ECF No. 1-3, p. 26]. Specifically, the order requires Gulbalis to pay up to $15,000 to owners of forty-five separate vehicles, "representative of the costs associated with the importation and

14

conformance of a foreign motor vehicle to meet federal safety and environmental standards," for a total of $675,000.[6] [*Id.*]. USCIS therefore properly looked to the restitution order in Gulbalis' case to determine that the $10,000 threshold was met. *See Conteh v. Gonzales*, 461 F.3d 45 (1st Cir. 2006) (finding that court could look to restitution order to determine amount of loss as it was part of the record of conviction).

In addition, in *Nijhawan*, while the Supreme Court did not expressly overrule *Obasohan*, the Court did find that the definitional approach used in such cases was overly narrow. In fact, the *Nijhawan* Court found nothing improper with an Immigration Judge relying on sentencing material in determining whether the $10,000 threshold was met, and Gulbalis has not pointed to Eleventh Circuit caselaw supporting the idea that the *Obasohan* court would reach the same ruling, were that case decided today. *See, e.g., Socarras v. U.S. Dep't of Homeland Sec.*, 672 F. Supp. 2d 1320, 1324 (S.D. Fla. 2009) (citing *Nijhawan* and finding that "In light of the restitution order provided by the Defendants and [petitioner's] concession of the loss amount, the Defendants have proven by clear and convincing evidence that the loss to the victims of her fraud crime exceeded $10,000.").

Finally, the restitution order states that restitution was ordered pursuant to 18 U.S.C. § 3663A. As Defendants note in their reply [ECF No. 15, p. 2], that statute

---

[6] While the restitution order states that the restitution amounts will be reduced by the amounts paid by certain other defendants in other criminal cases, Gulbalis has not raised any argument that this fact somehow reduces the net amount of loss to victims to an amount less than the requisite $10,000.

15

mandates that as part of sentencing, a defendant "make restitution **to the victim of the offense**." (emphasis added). This provides yet another reason to conclude that the persons listed on the restitution order were victims of Gulbalis' offense/conviction -- restitution should only be ordered to the victims of an offense.[7]

Section 3663A actually defines the word "victim" as well:

> the term "victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, **any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern**.

18 U.S.C.A. § 3663A(a)(2). This definition drives the point home. While Gulbalis was convicted of conspiracy to defraud the Government, the persons listed on the restitution order are still victims of her criminal conduct, because they were directly harmed by that conduct.

---

[7] In general, "[f]ederal courts [ ] now allow broader restitution orders encompassing losses that result from a criminal scheme or conspiracy, regardless of whether the defendant is convicted for each criminal act within that scheme. The harm must be a direct result of the defendant's criminal conduct, though, or closely related to the scheme." *United States v. Henoud*, 81 F.3d 484, 488 (4th Cir. 1996). This broad rubric may have informed the criminal judgment and restitution order in *Obasohan*, where restitution was ordered for conduct Obasohan was not directly convicted of. However, the criminal court in Obasohan's case appears to have entered a restitution order related to conduct that Obasohan was not convicted of -- that is unusual. This distinction was key to the Eleventh Circuit's finding that Obasohan was not convicted of an aggravated felony. However, in Gulbalis' case, there is no indication in the criminal record that restitution was not based on her convicted conduct, and unlike Obasohan, Gulbalis even admitted to a loss in her plea agreement.

The USCIS properly relied on the restitution order in determining that Gulbalis was convicted of an aggravated felony. Consistent with the Supreme Court's ruling in *Nijhawan*, the USCIS looked beyond the elements of Gulbalis' convicted offense, to the circumstances surrounding her crime. The restitution order is tethered to the criminal judgment. The criminal judgment directly incorporates, by reference, the restitution order, and makes it clear that the victims listed on the restitution order are victims of Gulbalis' criminal conduct. Losses to those victims are well in excess of the $10,000 threshold.

> **B. The plea agreement specifically states that the loss associated with Gulbalis' conviction exceeds the $10,000 threshold.**

In *Obasohan*, the restitution order was the only document that made reference to any loss, the restitution order was not directly tied to Obasohan's convicted conduct (the judgment), and Obasohan did not admit to any loss by pleading guilty. *Obasohan*, 479 F.3d at 789, 791. While Obasohan executed a plea agreement, and the plea agreement explicitly allowed for the Court to order restitution, the plea agreement did not reference any loss. In fact, during the plea colloquy, counsel for the Government admitted that the loss would be **zero.** *Id.* These facts were key to the Court's decision that the restitution order could not support a finding that the $10,000 threshold was met.

However, the facts in Gulbalis' case are markedly different. According to the plea agreement, the "actual, probable or intended loss pursuant to Section 2F1.1(b)(1) of

17

the Sentencing Guidelines resulting from the offense committed in this case is within the range of $41,000 to $70,000." [ECF No. 15-1]. This, alone, would constitute proper grounds for upholding the USCIS's decision in this case, and it also provides additional support for the USCIS's decision to consider the restitution order in determining whether the $10,000 threshold was met (on the basis that Gulbalis, unlike Obasohan, admitted to a loss, and that loss was further detailed in the restitution order). The plea agreement relates directly to Gulbalis' convicted conduct, and it specifies a loss well in excess of the $10,000 threshold necessary to find that an offense constitutes an aggravated felony.

Moreover, where the 8 U.S.C. § 1101(a)(43)(M)(i) aggravated felony is based on an attempt or *conspiracy* under 8 U.S.C. § 110(a)(43)(U), then an actual loss is not necessary. *Adeoye v. Atty. Gen.*, 403 F. App'x 464, 464 (11th Cir. 2010) (unpublished opinion). Instead, when the conviction "constitute[s] an attempt or conspiracy to commit an offense involving fraud that had an intended loss exceeding $10,000 . . . the conviction constitute[s] an aggravated felony under subsection (U)." *Id*. at 465. Because Gulbalis admitted in her plea agreement to an intended loss of between $41,000 and $70,000, this is more than sufficient to meet the $10,000 hurdle even if no actual losses had been proven.

### III. CONCLUSION

For the reasons stated above, the Undersigned **affirms** the USCIS's decision, **grants** the Defendants' Motion to Dismiss [ECF No. 7], **denies** Gulbalis' Petition for relief [ECF No. 1], and enters **final judgment** in favor of the USCIS and against Gulbalis.

**DONE and ORDERED**, in Chambers, in Miami, Florida, this 16th day of March, 2015.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**

All Counsel of Record